# AMERICAN SUGAR REFINING COMPANY *v.* UNITED STATES.

# AMERICAN SUGAR REFINING COMPANY *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 225, 236. Argued April 12, 1901.—Decided May 20, 1901.

These cases, argued and submitted together, involve the appraisement of sugars imported from Brazil. The sugars were shipped "green," that is, contained moisture, a certain portion of which drained on the voyage, whereby they became more valuable. Duties were levied and collected by the collector upon the increased valuation, against the protest of the importers. *Held* that the appraisement so made was legal.

THE case is stated in the opinion of the court.

*Mr. H. B. Closson* for the Sugar Refining Company. *Mr. John E. Parsons* was on his brief.

*Mr. Assistant Attorney General Hoyt* for the United States.

MR. JUSTICE McKENNA delivered the opinion of the court.

These two cases were argued and submitted together. They involve the appraisement of certain sugars imported from Brazil. The sugars were shipped "green," that is, contained moisture. A certain per cent of this moisture drained on the voyages, and the sugars became thereby more valuable. In other words, as the sugars diminished in weight they increased in value, being worth as much here as the original quantity shipped in Brazil. This is always true of Brazilian sugars, and is recognized by the trade and is made a basis of settlement between vendor and vendee. The "settlement test" was used by the appraisers in ascertaining the value of the sugars in Brazil in

the condition they arrived here. Mr. Sharretts, a member of the general board of appraisers, testified in No. 236 (and there was no opposing testimony) as follows:

"The price paid for sugars of this description from Brazil is a conditional one, the stipulation being that they will give a certain price, with a proviso that the decrease or loss of weight in decreased moisture shall not exceed a certain point. Therefore, in determining what the real price to be paid for that sugar was, it was necessary to determine what the test was in the United States. By an agreement between the board of general appraisers and the government on the one side and the importers on the other, we accepted in all cases the settlement test as controlling; that is, the test upon which the commercial transaction was made was the test which we accepted as the controlling one in determining the quantity or percentage of sugar on which duty was to be paid. In this particular case the board found or the board made a return upon the settlement test. On that settlement test they made the report and found the value to be equal to 11*s.* 11*d.* per 100 kilos or per ton, the equivalent for this sugar of the same test as that which arrived in the United States, in the country of exportation. In other words, they held that the diminished quantity of sugar arriving in the United States was worth just as much as they paid for the original quantity as shipped from Brazil. We therefore found it on the basis of the settlement test to be 11*s.* 11*d.*"

Duties were levied by the collector upon the increased valuation of the sugars. The importers protested, claiming that the duties were illegally exacted. The action of the collector was affirmed by the board of general appraisers, and successively by the Circuit Court and the Circuit Court of Appeals. The cases were then brought here.

Under section 182½ of the tariff act of 1894 the rate of duty was fixed at forty per cent; but upon what valuation? Counsel for petitioner says:

"In each of these importations the appraiser ascertained that the market value of the sugar when shipped was a certain amount per hundredweight. To this valuation, in each case, he made an addition of a certain further amount per hundredweight

to represent a supposed increase of its value during the voyage owing to drainage. Duty was accordingly assessed at forty per cent, not of the value of the sugar per hundredweight ' at the time of the exportation to the United States,' ' on the day of actual shipment,' and ' in the condition in which such merchandise is there bought and sold for exportation to the United States,' but at forty per cent of its greater value per hundredweight in its condition when landed."

It is apparent that the increase in value offsets the decrease in weight—that is, the total value of the invoice was not increased. Where then was there injury to petitioner? The claim is that duties should have been levied according to the condition in which the sugars had been bought in Brazil, but the claim ignores one element of that condition—the very element which made the condition—and ignoring it the claim is attempted to be justified by section 19 of the customs administrative act of 1890. The section provides as follows:

" That whenever imported merchandise is subject to *ad valorem* rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale. . . . That the words ' value ' or ' actual market value' whenever used in this act or in any law relating to the appraisement of imported merchandise shall be construed to mean the actual value or wholesale price as defined in this section."

We do not think the statute is very obscure. Passing by the consideration of section 23, (inserted in the margin,)[1] we may say, as was decided in *Marriott* v. *Brune*, 9 How. 619, and

[1] SEC. 23. " No allowance for damage to goods, wares and merchandise imported into the United States shall hereafter be made in the estimation and liquidation of duties thereon. But the importer thereof may, within ten days after the entry, abandon to the United States all or any portion of

*United States* v. *Southmayd*, 9 How. 637, imported merchandise is that which arrives in this country, and it is upon that duties are to be paid. Those cases passed on imports of sugars which had lost weight by drainage on the voyages. The controversy was whether duties should be levied upon the weight of the sugars when shipped, or upon their weight when they arrived, which was less on account of drainage and waste to the extent of five per cent, than when they were shipped. The court sustained the latter view, saying: "The general principle applicable to such a case would seem to be, that revenue should be collected only from the quantity or weight which arrives here. That is what is imported—for nothing is imported until it comes within the limits of the port." The evidence in those cases also showed that the quality of the sugars was less on account of the drainage. "Nor is his sugar improved in quality," the court said, "by the drainage, so as to raise any equity against him (the importer) by it."

The evidence in the case at bar is that the sugars had improved in quality—becoming a higher grade of sugar, and necessarily under the principle of the cited cases it was that grade which was imported. Why then should they not have paid duty according to that grade? It was that grade, to use the language of *Marriott* v. *Brune*, which went "into the consumption of the country"—it was that grade which went "into competition with our domestic manufactures."

But, it is contended, that was not their condition when shipped. In one sense it was not, nor did the importers seek to pay duty on the sugars in the condition in which they were shipped. An element of that condition escaped, and it was calculated that it would escape, and the price to the importer was to be adjusted by it. With no decrease in the value of its sugars, petitioner claims a decrease of duties which the law fixes by value. The petitioner wants the benefit of the weight of the old condition and the benefit of the quality of the new.

goods, wares and merchandise included in any invoice, and be relieved from the payment of the duties of the portion so abandoned, provided the portion so abandoned amounts to ten per centum or over of the total value or quantity of the invoice."

To dwell upon the relative conditions of the sugars is misleading. They are really not the same articles, and it is upon the imported article the duty must be laid. This is the purpose of the statute. It is "such merchandise" which is imported and which is subject to an *ad valorem* duty according to its market value from whence it has come. And the practical justness of the rule is illustrated by this case. It is true that a witness testifying generally as to drainage from sugar cargoes said " it (the drainage) might be worth more and it might not be worth much." But what it was worth in the present case was not testified to. Whatever it was worth, it was petitioner's property, and whether it was worth reclamation was for petitioner to judge. Besides the ultimate valuation of the appraisers is not contested. Their authority is to make it. As the Court of Appeals said, " the legality of the appraisement is questioned, not its accuracy or its equity." We have no doubt about its legality, and the

*Judgments are affirmed.*