UNITED STATES v. FREEDMAN & SLATER, INC.

**No. 7974.—**

Entry Nos. 704314; 704313.

## Second Division, Appellate Term

(Decided March 22, 1951)

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel); *Barnes, Richardson & Colburn* (*Hadley S. King* of counsel), and *Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel), associate counsel; for the appellee.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., dissenting

FORD, Judge: This application for review of the decision and judgment of the trial court was filed under the provisions of 28 U. S. C. (1946 ed., Supp. III) § 2636 (a). The merchandise involved consists of two shipments of wet salted "frigorifico" sound bull hides exported from Buenos Aires, Argentina, and entered at the port of New York. The hides covered by both appeals were entered at the unit invoice value of 78 Argentine pesos per 100 kilograms of weight, plus certain dutiable charges, as invoiced. These charges are not here in dispute. In appeal No. 171098–A the hides were appraised at 78 Argentine pesos per 100 kilograms, plus 6.46 per centum, plus the aforesaid charges. In appeal No. 171699–A the hides were appraised at 78 Argentine pesos per 100 kilograms, plus 6.7778 per centum, plus the aforesaid charges.

On the summary sheet attached to each entry here in question appears the notation that "Sec. 14.3 (e), C. R. 1943 applies." The above section is as follows:

(e) When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

Counsel for appellee, in his brief filed before the trial court, made the following statement regarding the issue here involved:

* * * it is obvious from an examination of the entry and accompanying papers that the amount added by the Appraiser in both instances was the result of a mathematical calculation to equal the amount lost by evaporation or otherwise between the time of shipment and the time of arrival in New York. The invoice weight on entry 704314 [reappraisement No. 171098–A] was 9,718 kilos or 21,424 lbs. The net landed weight as reported by the surveyor was 20,124 lbs. which is a difference of 1,300 lbs. or 6.46% of the net landed weight. On entry 704313 [reappraisement No. 171699–A] the shipping weight was 9,211 kilos or 20,307 lbs. The United States Weigher's report indicates a net landed weight of 19,108 lbs. or a difference of 1,289 lbs., which is 6.7778% of the net landed weight.

Counsel for appellant, in his assignment of errors, alleges 41 specific errors in the decision and judgment of the trial court. We do not feel, however, that a proper disposition of this case requires that the assignment of errors be copied herein or that each error assigned be specifically dealt with. Neither do we feel that it is necessary to a proper disposition of this case that all of the evidence be set out in detail. However, all of the evidence has had our careful examination and consideration in the light of the errors assigned, the argument of counsel on both sides, and the authorities cited as supporting their respective contentions.

It is apparent that the trial court gave proper consideration and weight to all the evidence, as well as to the arguments of counsel and the authorities relied upon, and, in a well-considered opinion, held that at the time of exportation of the hides in question, Buenos Aires, Argentina, was the principal market for the sale of such wet salted frigorifico sound bull hides both for home consumption and for exportation to the United States; that the price at which such hides were freely offered for sale and sold in the ordinary course of trade in Buenos Aires to all purchasers for home consumption and for exportation to the United States, as provided in section 402 of the Tariff Act of 1930, was 78 Argentine pesos per 100 kilos, plus certain dutiable charges as invoiced; that the price of such hides did not vary by reason of differences in quantities; and that the price of such hides did not increase in the foreign market by reason of loss in weight because of evaporation or shrinkage. If the evidence supports the above findings of the trial court, its judgment should be affirmed.

In support of its contention, counsel for appellee offered and there was received in evidence as exhibit 4, an affidavit wherein the affiant states under oath that he has been associated with Compañía Swift de La Plata Sociedad Anónima Frigorífica of Buenos Aires, Argentina, for 29 years and is thoroughly familiar with the sale of hides produced by such company and sold either for export or for consumption in Argentina. Affiant further states:

That in 1944 the City of Buenos Aires was the principal market in Argentina for the sale of such bull hides either for export or for home consumption. This City was the principal market by reason of the fact that the greatest number of transactions were made there and the merchandise was offered and quoted "ex frigorífico Buenos Aires";

That during the entire month of July 1944 such or similar bull hides were freely offered for sale to all purchasers in the principal market of Argentina in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at 78 pesos per hundred kilos packed, ready for shipment to the United States.

That during the entire month of July 1944 such or similar bull hides were freely offered for sale to all purchasers in the principal market of Argentina in the usual wholesale quantities and in the ordinary course of trade for consumption in Argentina at 78 pesos per hundred kilos, packed, ready for delivery;

That the price for export or the price for consumption in Argentina was the same regardless of the quantity purchased.

Exhibit 6 is an affidavit of one Pablo Cesar Calcaterra, who states that he has been associated for 29 years with Wilson & Cía. S. A. I. C., packers of Buenos Aires. The statements contained in exhibit 6 are almost identical with the statements contained in exhibit 4, and it is, therefore, not necessary to copy or repeat them here. The statements contained in the two affidavits find support in the sworn testimony of the witnesses offered by counsel for appellee during the trial of this case.

Appellee's witness Kaufmann testified as follows:

Q. Will you please state the prevailing price in July 1944 for wet salted sound or standard frigorifico bull hides?

    *      *      *      *      *      *      *

A. As far as I can see that is the ruling price.

JUDGE MOLLISON: What price?

WITNESS: 78 pesos per 100 kilos was the price to be paid to the frigorificos ruling at that time.

    *      *      *      *      *      *      *

Q. For export, did you ever hear of a higher price?—A. No.

Appellee's witness Shaifer also testified on direct examination as follows:

Q. From the examination of these two invoices have you a recollection of the prices at which frigorifico sound bulls or standard bull hides were freely offered for sale at Export to the United States in the Argentine?—A. 78 Argentine pesos, paper pesos, per 100 kilos in the Argentine.

On cross-examination, this witness also testified as follows:

Q. Do you know anyone that paid more than the 78 pesos?—A. No.

Q. That was the one and only price at that time for frigorifico hides, is that right?—A. So far as I know, yes.

After a careful examination and consideration of the record before us, we are in agreement with the trial court that:

\* \* \* Both by the testimonial record of witnesses who were familiar with the market in Argentina for wet salted frigorifico sound bull hides at the time of exportation of the merchandise here involved, and by affidavits of persons shown therein to be familiar with the sale of hides produced in Argentine frigorificos, plaintiff established that the price, at the time of exportation of the hides here involved, at which such hides were freely offered for sale either for home consumption or for exportation to the United States to all purchasers in the principal market of Argentina, in the usual wholesale quantities and in the ordinary course of trade, was 78 Argentine pesos per 100 kilos, packed ready for delivery or for shipment to the United States, and, indeed, this evidence agrees with much of the evidence offered on behalf of the defendant. \* \* \*

Although there is nothing in the official papers to indicate the basis of appraisement adopted by the appraiser, the trial court concluded that the basis adopted by the appraiser was section 402 (a) (1) of the Tariff Act of 1930, providing that "For the purposes of this Act the value of imported merchandise shall be—(1) The foreign value or the export value, whichever is higher." This conclusion was based upon the statement of counsel for appellant herein that "I will say that the appraised value represents both the foreign value and the export value of the merchandise" and the fact that the appraisement was made in Argentine pesos. With this conclusion, we are in agreement.

In *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241, our appellate court held that:

When the appraisement first came before the trial court, it must be presumed that the appraisement and all items thereof constituted the true valuation of the merchandise and the burden rested upon the party who challenged its correctness or the correctness of any of its items to prove otherwise. Section 501, Tariff Act of 1930.

In applying the rule quoted above to the facts in the *Freedman* case, *supra*, our appellate court observed:

The only evidence as to this item of the allowance of 10 per centum discount which appears in the record is that of the witness Bunn who testified that in making the appraisement, he allowed 10 per centum for discount.

After referring to a price list which had been admitted in evidence in that case, our appellate court said:

The appraiser was advised that this pricelist was not used by the exporters, and the witness Bunn stated: "He makes his sales without any regard to the price lists: and I paid no attention to the price list, as it was apparently an obsolete price list." Again, the witness stated that he relied upon the language used by

the Treasury attaché, that is: "Examination of numerous inland sales indicates that Suse & Gro'ger do not adhere to the prices and discounts shown in their price list, Exhibit 'A.' "

It, therefore, appears that there is no evidence in the record as to the source from which the allowance of the item of 10 per centum discount was obtained, nor is anything offered by which the correctness of its allowance may be now attacked. Under the presumption of correctness established by said section 501, its correctness will be presumed. The Government had an opportunity to attack the item in the trial court. Having failed to do so, it is too late to do so now, in view of the condition of the record.

By its two appeals herein, the appellee has attacked only the item of the appraisement represented by the addition to the entered value of the percentages of 6.46 and 6.7778, respectively. Under the holding of our appellate court in the *Freedman & Slater* case, *supra*, and *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, all other items of the appraisement are presumed to be correct and must stand as made by the appraiser.

In accordance with its appeals, appellee in the trial court only offered evidence tending to establish that the item of percentages made by the appraiser, hereinbefore set out, was not any part of the true value of the merchandise, and that such percentages were erroneously added by the appraiser. It is our view that the evidence before us conclusively establishes that the respective item of percentages added by the appraiser is not any part of the value of the merchandise and should not have been added to the value by the appraiser.

It is contended, however, by counsel for appellant that the appellee did not establish that hides in the condition of those imported were freely offered for sale in the principal market of Argentina for home consumption or for export to the United States. This same contention was made before the trial court, and was disposed of in the the following language:

* * * This contention is contradicted by and inconsistent with the appraisement upon which defendant relies, for, being on the basis of foreign and export value, it presupposed the offer for sale in the foreign market of merchandise such as or similar to that here involved. Since the plaintiff herein challenged only the percentage advances of the appraisements, it was entitled to rely upon the presumption of correctness attaching to all other items of the appraisements, including the presumption that merchandise such as or similar to that imported was offered for sale in the country of exportation under the terms of the valuation statute. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. 60, C. A. D. 371. Moreover, the record shows that there was no allowance made in the foreign market on account of moisture content, nor was there any standard moisture content, nor did the price in the foreign market of wet salted frigorifico sound bull hides increase by reason of loss of weight due to evaporation or moisture or shrinkage.

As supporting its contention herein, counsel for appellant cites and relies upon *American Sugar Refining Company* v. *United States*, 181 U. S. 610, 45 L. ed., 1024. The facts in the *American Sugar Refining*

*Company* case, *supra*, and in the instant case readily distinguish the two cases, as is shown by the following quotation from the *American Sugar Refining Company* case, *supra:*

The evidence in the case at bar is that the sugars had improved in quality,—becoming a higher grade of sugar, and necessarily, under the principle of the cited cases, it was that grade which was imported. Why, then, should they not have paid duty according to that grade? It was that grade, to use the language of *Marriott* v. *Brune*, which went "into the consumption of the country,"—it was that grade which went "into competition with our domestic manufactures."

In the present case the evidence is conclusive that the involved hides were not improved or advanced in value by reason of the loss in weight during the voyage of importation. Therefore, the hides in question had *not* improved in quality, becoming a higher grade of hides by reason of the loss in weight during the voyage of importation. By reason of the different state of facts in the *American Sugar Refining Company* case, *supra*, and in the instant case, it thus appears that the *American Sugar Refining Company* case, *supra*, supports the contention of the appellee herein.

The above observation finds abundant support in the further quotation from the *American Sugar Refining Company* case, *supra:*

* * * we may say, as was decided in *Marriott* v. *Brune*, 9 How. 619, 13. L. ed. 282, and *United States* v. *Southmayd*, 9 How. 637, 13 L. ed. 290, imported merchandise is that which arrives in this country, and it is upon that duties are to be paid. Those cases passed on imports of sugars which had lost weight by drainage on the voyages. The controversy was whether duties should be levied upon the weight of the sugars when shipped, or upon their weight when they arrived, which was less on account of drainage and waste to the extent of 5 per cent, than when they were shipped. The court sustained the latter view, saying: "The general principle applicable to such a case would seem to be that revenue should be collected only from the quantity or weight which arrives here. That is what is imported,—for nothing is imported until it comes within the limits of the port." The evidence in those cases also showed that the quality of the sugars was less on account of the drainage. "Nor is his sugar improved in quality," the court said, "by the drainage, so as to raise any equity against him (the importer) by it."

Likewise the case of *Sands & Leckie* v. *United States*, 10 Treas. Dec. 772, T. D. 26956, does not lend support to the contention of appellant, as shown by the following quotation therefrom:

The testimony taken at the hearing does not shed much light upon the contention, for from parts of it it would appear that it was the value upon which the merchandise was assessed, rather than the method of ascertaining that value, that the importers complained of. This, however, would be a question that could be raised only in a reappraisement proceeding as provided for in section 13 of the act of June 10, 1890, but as the importers failed to pursue the remedy which that section provides, we think it fair to construe their contention to be that the foreign market value of the merchandise at the time of exportation was correct as stated in the invoice and that it was illegal for the appraising officer to change the value by reason of shrinkage in weight. The collector contends that it is the appraiser's duty to find the foreign market value at the date of exportation but

in the condition in which the merchandise is imported, and that upon the value thus ascertained duty must be assessed and collected. With this view it is not the accuracy of the appraisement or reappraisement that is called in question, but its legality.

In the present case the legality of the action of the appraiser is not questioned by anyone, and consequently is not before us for decision. The decision in the *Sands & Leckie* case, *supra*, appears to have been based upon this point entirely, for the court says: "We reach the conclusion, therefore, that the appraising officer, in taking into account the shrinkage of the hides, and their increase of value thereby, did not proceed upon a wrong principle in appraising them for duty purposes." From the above quotation, it will be seen that the hides in the *Sands & Leckie* case, *supra*, did increase in value by reason of their shrinkage during the voyage of importation, while the contrary of that is true in the present case. The evidence in this case definitely establishes that the hides did not increase in value by reason of the shrinkage, a portion of which evidence was elicited from the witnesses by counsel for the appellant herein.

The case of *Reiss et al.* v. *Magone*, 39 Fed. 105, strongly supports the position of appellee herein, as will appear from the following:

The importer has to pay duty only upon what he imports. If his importation weighs 100 pounds when it leaves the other side, and 80 pounds only when it comes here, he pays on the 80 pounds which enters into the commerce of this country, and not upon the 100 pounds he bought on the other side. It may happen, however, that the shrinkage in weight has added a percentage of value, and that the 80 pounds which arrives is in its then condition worth more per pound in the markets of the country from which it came than the original 100 pounds was worth per pound. To illustrate, there may be a difference in the foreign market between 80 per cent. soap and 60 per cent. soap. If what reaches this country is in fact 80 per cent. soap, it should in fairness be appraised at its value as 80 per cent. soap in the foreign markets at the time of exportation, although the invoice may describe it as 60 per cent. soap at a lower value. But of course duty should be assessed only upon the amount actually imported. Such a method of appraisement seems to be in accordance with the provisions of the statute. In order, however, to warrant such an assessment of duty, the appraiser must first find that the 80 pounds imported was worth per pound such a sum as would warrant the particular amount of duty assessed. In this case there is no evidence that the appraiser has so found, and, *on the contrary, the evidence is that the per pound value of the article imported was the same as that stated in the invoice, which would make the per pound value of the 80 pounds no greater than the per pound value of the 100 pounds.* In view of the state of the evidence, therefore, I shall, as to the soap, instruct the jury that their verdict must be for the plaintiffs. [Italics ours.]

At the trial, appellee's witness Kaufmann was interrogated and answered as follows:

Q. Do the prices or values of merchandise that is similar to the merchandise before the Court this morning, to wit, wet salted sound frigorifico bull hides increase by reason of a loss in weight due to evaporation or—withdraw that—do the prices or values increase by reason of loss of weight due to evaporation of moisture or shrinkage?—A. Of these particular hides?

Q.  Yes.—A.  No.

Q.  Would it of any kind?—A.  Yes.

Q.  But it does not increase with regard to frigorifico hides?—A.  No, with frigorifico hides it does not increase.

The above testimony is typical of that given by appellee's two other witnesses, and such testimony stands uncontradicted in any respect.

During the trial, counsel for the appellant offered and there was received in evidence as exhibit 5 a customs agent's report in the form of a letter addressed to the supervising customs agent in New York, subject to a motion of appellee's counsel to strike therefrom all matters which are incompetent, immaterial, and irrelevant.  In its decision, the trial court granted this motion and struck from said report that portion thereof beginning on page 1 with the words "Mr. E. J. Price, Inspector-in-Chief, Hide Bureau," down to and including the third paragraph on page 10, the end of which paragraph reads as follows: "* * * properly cured and will not contain excessive moisture." Specific exceptions to this ruling were made by counsel for appellant.

During the trial of the case counsel for appellant made several motions to transfer the case to Chicago, which said motions were all denied by the trial court.  Counsel for appellant assigned error as to the denial of these motions.  With reference to the above motions and its disposition of the same, the trial court observed:

In connection with the foregoing ruling, I wish to note that during the course of the trial counsel for the defendant sought to introduce other evidence concerning the value and leather content of hides such as those at bar *in relation to their use and disposition after importation.*  In each instance the evidence offered was excluded upon the ground that such evidence was immaterial and irrelevant to the issues raised herein.  Upon review of the record, I am satisfied that such rulings were correct, and they are consequently adhered to, as are the rulings denying the several motions of the defendant to transfer the case to Chicago, shown to have been for the purpose of securing oral evidence of the same nature.

Counsel for appellant assigns as error various other rulings made by the trial court as to the admission and exclusion of evidence, all of which have had our careful consideration.  While we are not in entire accord with the ruling on some of these motions, yet each of them was addressed to the sound, legal discretion of the trial court, and, based upon an examination of the entire record, we are unwilling to hold that in making the rulings complained of, the trial court abused its discretion.

In passing, we wish to make an observation with reference to section 14.3 of the Customs Regulations of 1943, heretofore quoted, which counsel for both parties, and, to some extent, at least, the trial court, appear to have accepted as authority for the appraiser to make the percentage additions in this case, concerning which this litigation arose.  We do not so read or construe this regulation.  This regulation merely states that:

When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, *and the value of the unit of quantity has correspondingly increased,* such advance shall not be deemed an advance in value for the purpose of assessing additional duty. [Italics ours.]

Certainly there is nothing in the quoted language which either directs or authorizes the appraiser to increase the value of merchandise because of a decrease in weight by reason of evaporation or otherwise. If and when the appraiser finds that the value of the unit of quantity of imported merchandise has increased due to the fact that such merchandise has decreased in weight by reason of evaporation or otherwise, it is certainly his duty to advance or increase the unit of value of such merchandise, but his authority for such action cannot be found in, or spelled out of, section 14.3 of the Customs Regulations of 1943. For such authority, the appraiser must look to, and be guided by section 500 of the Tariff Act of 1930, which, under the heading "Duties of Appraising Officers," reads:

\* \* \* It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

\*        \*        \*        \*        \*        \*        \*

Section 489 of the Tariff Act of 1930 provides in plain, unequivocal language that:

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. \* \* \*

It is clear from a reading of section 14.3 of the Customs Regulations of 1943 that it attempts to exempt a certain class of merchandise from the assessment of additional duties, which exemption is not contained in section 489, *supra,* and to this extent said section 14.3 is in contravention of said section 489. To the extent section 14.3 of the Customs Regulations of 1943 exempts imported merchandise from the assessment of additional duties, which additional duties section 489 of the Tariff Act of 1930 declares shall be levied, collected, and paid, it would seem to be null and void and of no effect.

The above observations with reference to section 489 and section 500 of the Tariff Act of 1930, and section 14.3 (*e*) of the Customs Regulations of 1943, are made with full knowledge that the question

was not litigated in this case, but we do not wish to be understood as silently acquiescing in the seemingly accepted proposition that section 14.3 of the Customs Regulations of 1943 authorizes the appraiser to make the percentage additions when he finds that imported merchandise has decreased in weight during the voyage of importation and the value unit of quantity has correspondingly increased, and that section 14.3 was not in violation of section 489 of the Tariff Act of 1930. In fact, said section 14.3 appears to be directed to the collector of customs rather than to the appraiser of merchandise.

Based upon a full consideration of the evidence before us, we find as facts:

1. That the merchandise involved in this application for review consists of wet salted frigorifico sound bull hides exported from Buenos Aires, Argentina.

2. That at the date of exportation of the hides in question Buenos Aires, Argentina, was the principal market for the sale of such or similar wet salted frigorifico sound bull hides both for home consumption and for exportation to the United States.

3. That at the date of exportation of the hides in question the price at which such or similar wet salted frigorifico sound bull hides were freely offered for sale and sold in the principal market of the country of exportation in the ordinary course of trade to all purchasers for home consumption or for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed, ready for shipment to the United States, was 78 Argentine pesos per 100 kilograms, plus dutiable charges as invoiced.

4. That the price of such or similar wet salted frigorifico sound bull hides did not vary according to the quantities offered for sale or sold.

5. That the value of such or similar wet salted frigorifico sound bull hides did not increase by reason of the loss in weight through evaporation or shrinkage during the voyage of importation.

We conclude as matter of law:

1. That the foreign and export values of the hides in question, as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930, are the same.

2. That the proper basis for determining the value of the hides in question is such foreign or export value.

3. That such foreign or export value in each case is as set out in finding of fact No. 3.

The decision of the trial court is in all respects affirmed. Judgment will be rendered accordingly.

RAO, Judge: I regret that I cannot concur with the views expressed by the majority of this court in sustaining the judgment of the trial court in favor of plaintiff below.

At the outset, I wish to state that my disagreement with the majority is based, not upon any final conclusions with respect to the merits, but rather upon the fact that, in my opinion, the appellant did not have a full and complete day in court. In order, however, to point out the respects in which I feel the trial court erred, it will be necessary for me to make a brief statement of the issues in the case.

The merchandise in each of these cases consists of wet, salted frigorifico sound bull hides, exported from Argentina. In both instances, entry was made at 78 Argentine pesos per kilo, plus certain dutiable charges, as invoiced. In reappraisement No. 171098–A, the hides were appraised at 78 Argentine pesos per 100 kilos, plus 6.46 per centum, net packed, plus certain items marked X on the invoice, and in reappraisement No. 171699–A, appraisement was at 78 Argentine pesos per 100 kilos, plus 6.7778 per centum, net packed, plus the items marked X.

The parties hereto are at variance solely over the item added by the appraiser on each of these entries to compensate for the shrinkage in weight of the hides during the voyage from Argentina, to wit, 6.46 per centum and 6.7778 per centum, respectively. Counsel for appellant contends here as it did before the trial court, that—

\* \* \* the importer has failed to meet its burden of proof by evidence showing the prices at which hides such or similar to those imported herein were freely offered for sale or sold for home consumption or for export to the United States at the time of exportation thereof in the condition in which such hides were imported and that the provisions of section 14.3 (e) of the Customs Regulations of 1943 applies thereto and the percentage additions thereunder have not been controverted.

It is apparent from the record, however, that counsel for appellant was not content to rely solely upon the alleged omissions of proof on the part of appellee in this case. Instead he attempted to show affirmatively that the hides in their condition as imported differed from the hides in their condition as exported, the difference being attributable to shrinkage by evaporation of water, and that since merchandise must be appraised in its condition as imported, the appraiser had not erred in making additions for shrinkage. In this endeavor, which was manifest by persistent and determined efforts to introduce evidence to establish these ultimate facts, counsel for appellant was not permitted to proceed. The court did not allow questions tending to establish this line of proof to be put to witnesses called by the defendant nor asked on cross-examination of those testifying on behalf of plaintiff.

Accordingly, appellant claims here that the trial court erred in the following manner:

1. In failing to admit and receive evidence material to the issue.

2. In refusing a continuance of the case and in denying the Government's motion to transfer the case to Chicago for further testimony.

In its opinion, the court below expressly affirms the principle that merchandise is dutiable in its condition as imported by the following statement:

Now, of course, it must be remembered that the value statute refers to the value in the principal markets of the country of exportation of merchandise such as or similar to that *imported*, and it might not be amiss to point out that it is not the value of the merchandise which was *exported* which is in question, but the value of the merchandise which was imported. [Italics quoted.]

In view thereof, I believe that the court should not have rejected evidence which was offered by appellant tending to show what that imported condition was. Clearly, proof that the hides which were imported were different from the hides which were exported, that they were in fact different commodities, to wit, wet hides and evaporated or shrunken hides, was pertinent to the issue in this case. If such proof existed and was available, and appellant contends that this was so, the opportunity to offer it should not have been denied. That it was so denied is apparent from a review of the record, with particular reference to those pages cited in assignment of error numbered 33 of the assignments filed by appellant together with its application for review.

Throughout the trial, the court sustained objections to questions tending to elicit proof as to whether loss of weight during transportation of frigorifico hides was usual or was customarily anticipated; whether shrinkage or evaporation of the water content results in loss of material; whether the desired element in the purchase of hides was the hide fiber, or what the desired element in fact was; what was the effect of shrinkage on the leather content; whether shrinkage affects the quantity of product to be obtained from the hide either adversely or beneficially; whether hides such as or similar to those in issue, in their imported condition were offered for sale in Argentina, and at what price.

In my opinion the answers to these questions had a very important bearing upon the issue of whether the hides in their imported condition differed from the hides as exported, and whether the imported merchandise increased in value by virtue of shrinkage or evaporation. Appellant should therefore have been permitted to pose them, to the end that all of the relevant facts could become matters of record and be passed upon by the trial court. We would then have been afforded an opportunity to determine what effect, if any, the answers to those questions had upon the merits of the case.

Moreover, I believe that the trial court erred in denying appellant's application for a continuance of the trial, made to afford appellant an opportunity to produce a witness, who, it was explained, was "both a technical witness and a trade witness in connection with Argentine hides." The request for the continuance was neither facetiously nor frivolously made. The good faith of the defendant, below, was manifested by its apprising the court at the time of certain pretrial arrangements, as well as at various times during the trial, that a continuance would be requested. While it is true that such negotiations occurred in November 1948, whereas the trial itself did not start until February 14, 1949, the fact is that it was not until January 15, 1949, that the parties finally decided upon which of the many pending cases on this issue would be pressed for trial.

When it is considered that the trial court permitted the plaintiff, below, to rest its case, subject to the submission in evidence of an affidavit which had not at that time been received from Argentina, the court's action in denying similar consideration to appellant seems especially unwarranted.

In addition, I believe the trial court should have granted appellant's motion to transfer the trial to Chicago, especially in view of the fact that counsel for the appellant, at the very opening of the trial, apprised the court that he would apply for a transfer. Aware as I am that New York, and not Chicago, was the port of entry for the merchandise before the court, I nevertheless believe that under the circumstances of this case appellant should have been permitted to produce its witnesses at the port at which they were available. The reasons why these witnesses could not appear and testify in New York, and the general substance of the testimony they were expected to give, were fully and fairly presented to the court. As one of the witnesses whom the appellant expected to call in Chicago was a member of the firm which had ordered the instant merchandise, it is fair to assume that he could have given testimony with respect to whether or not shrinkage and/or evaporation of moisture of frigorifico bull hides resulted in a corresponding increase in value of the unit of quantity in which the merchandise at issue was purchased.

I believe that the trial court has erred in the respects to which I have hereinbefore alluded, and that such action constitutes reversible error. Moreover, the record shows too much colloquy and argument between counsel and the court. Approximately 300 pages of the 412 in the record in this case consist of objections, colloquy, and argument. In my opinion the trial court permitted the same to affect the exercise of its sound judicial discretion.

For the foregoing reasons, the judgment of the trial court should be reversed and the cause remanded for such other and further proceedings as are consistent with the views herein expressed.