(Reap. Dec. 8356)

DUROCH LIMITED, INC. v. UNITED STATES

Entry No. 313007, etc.

(Decided November 24, 1954)

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Chauncey E. Wilowski, Samuel D. Spector, Daniel I. Auster*, and *Henry J. O'Neill*, trial attorneys), for the defendant.

EKWALL, Judge: The merchandise involved in these appeals for

reappraisement consists of certain Scotch-type whisky, exported from the Virgin Islands and entered at the port of New York. It was shipped to this country in barrels and placed in the foreign trade zone at New York, from which it was withdrawn and entered for consumption between the dates of September 12, 1941, and March 25, 1942. As brought into this country and withdrawn from the foreign trade zone, the merchandise consisted of 108-proof blended Scotch-type whisky. The importer, plaintiff herein, thereafter reduced the proof from 108 to 86 proof, by means of the addition of water, and bottled, labeled, and cased the remaining product in twelve ⅘-quart bottles to the case. Each carton contained 2.4 wine gallons, which are equivalent to 2.064 proof gallons. Plaintiff contends that the value found by the appraiser, $4.051 per proof gallon, packed, which it is agreed is based on cost of production (section 402 (f), Tariff Act of 1930) is too low, and that the proper value is $7.27 per proof gallon, which, it is alleged, is the United States value (section 402 (e), as amended by the Customs Administrative Act of 1938). It has been agreed by counsel that there is no foreign or export value, as defined by section 402 (c) and (d) of the Tariff Act of 1930, as amended, *supra*. It has been further agreed by counsel that, if the court finds that no United States value existed at the time of exportation, the appraised value is correct.

United States value is defined as follows (section 402 (e), *supra*):

The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The rather unusual situation here presented, in which plaintiff is seeking a higher value than that at which the whisky was appraised, is due to fact that the statute provides free entry for articles brought into the United States from the Virgin Islands "which do not contain foreign materials to the value of more than 20 per centum of their total value, upon which no drawback of customs duties has been allowed therein, * * *." (48 U. S. C. (1940 ed.) § 1394.)

Plaintiff introduced the testimony of the president of the plaintiff corporation, who testified that he had complete control of production and sales. His testimony established that his company purchased Scotch malts, United States grain neutral spirits, and sherry in the United States and shipped them to the Virgin Islands, where the ingredients were blended and the resultant product aged for plaintiff's

account. The plaintiff company owned the ingredients and the finished product and paid for the blending. Counsel for the plaintiff attempted to prove by this witness the price at which whisky imported by it under practically identical circumstances had been sold in the United States. The witness testified, over objection on the part of Government counsel, that previously imported bottled 86-proof whisky was sold at and immediately prior to August 4, 1941, in the American market at $21.95 a case of 12 bottles, each case containing 2.4 wine gallons, or 2.064 proof gallons. The witness further testified as to the amounts of the various elements entering into the United States value, as defined in section 402 (e), *supra*, i. e., "allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery," commission, profits, etc. All of this testimony was objected to on the part of Government counsel on the ground that no proof of similarity had been shown between the imported merchandise in bulk, with a proof of 108, and bottled merchandise at 86 proof. The witness testified that the addition of water did not change the character of the whisky. It was his theory that although the alcoholic content had been changed the "character" of the product had not been changed. He admitted, on cross-examination, that by "character" he meant they were both whiskies. He further admitted that the strength differed in the two products and also the cost; that the higher price relates to the 108-proof whisky. The difference in cost would be approximately 22 per centum more for the 108 proof. He testified further that he never sold whisky at 108 proof in the United States.

At the hearing, counsel for the plaintiff herein cited the cases of *Carey & Skinner* v. *United States*, 13 Ct. Cust. Appls. 7, T. D. 40848, and *Gevaert Co. of America, Inc.* v. *United States*, Circ. No. 3128, in support of his theory that evidence as to the selling price for the 86-proof whisky was admissible. I have examined the cases cited and find that they are not in point on the question of similarity. In the *Carey & Skinner* case, the court held that the cost of repacking a certain coal-tar derivative, incurred after the merchandise was imported, was not such an item for which allowance should be made under the terms of section 402 (d) of the Tariff Act of 1922, which, for the purposes of the issue herein, was not materially different from the provisions of section 402 (e) here involved. The question of the similarity of the imported goods and prototype goods sold in the United States was not in issue. An examination of the decision in the *Gevaert* case discloses that the merchandise there involved consisted of photographic films, which were repacked after importation. The court finds no indication that the films themselves were changed in condition, the only change being in the nature of packing. In the

instant case, the merchandise itself was changed in condition in that it was reduced in proof.

It is a well-known rule that merchandise is to be appraised in its condition as imported. *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, 67, C. A. D. 286; *United States* v. *Citroen*, 223 U. S. 407; *Dwight* v. *Merritt*, 140 U. S. 213, 219; *Worthington* v. *Robbins*, 139 U. S. 337; *Reiss* v. *Magone*, 39 Fed. Rep. 105; *American Sugar Refining Co.* v. *United States*, 181 U. S. 610; *United States* v. *Freedman & Slater, Inc.*, 39 C. C. P. A. (Customs) 194, 198, C. A. D. 486. As imported, this merchandise consisted of 108-proof blended Scotch whisky in barrels. The merchandise which plaintiff contends is similar, or identical, as the witness stated, has an alcoholic content of 43 per centum as against 54 per centum for 108-proof blended whisky, and it was brought out that 108 per centum whisky, put up in bottles, would sell for a higher price. The witness admitted that there were sales of 108-proof whisky in bottles in the United States. He further admitted that the 108-proof whisky has a higher strength and a higher cost than the 86 proof.

The 86-proof blended Scotch-type whisky is not "like" or "similar" to the 108-proof whisky imported. They are not commercially interchangeable. *Vernon Distributing Co.* v. *United States*, 39 C. C. P. A. (Customs) 205, C. A. D. 463; *Japan Import Co.* v. *United States*, 24 C. C. P. A. (Customs) 167, T. D. 48642.

In the *Vernon Distributing Co.* case, *supra*, the court stated:

There seems to have been some confusion as to the correct meaning of the word "like" as used in the statutes, the trade agreements and the stipulation, *supra.* So far as rum—the only product involved in this case—is concerned, there is, of course, a similarity between rums having different degrees of strength, but for tariff purposes 89 degree rum is not "like" 160 or 190 degree rum.

In the *Japan Import Co.* case, *supra*, the court quoted from its earlier decision in *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, as follows:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). * * *

In *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837, our appellate court, in interpreting the meaning of the term "similar," stated:

* * * The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article,

notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

It is difficult to conceive of commercial interchangeability of blended whisky imported in bulk of 108 proof and blended whisky of 86 proof sold in the United States in bottles. Upon the record as presented, I find that plaintiff has failed in its attempt to prove that the merchandise here involved in its condition as imported is similar for value purposes to merchandise sold in the United States. It has been agreed that no foreign or export value existed for this merchandise and plaintiff has conceded that if the court finds that no United States value existed, the appraised value, based on the cost of production (section 402 (f), Tariff Act of 1930), is correct.

I, therefore, find as facts:

1. The imported merchandise consists of 108-proof blended Scotch-type whisky, imported in barrels from the Virgin Islands.

2. That the said merchandise was appraised on the basis of cost of production, as defined in section 402 (f) of the Tariff Act of 1930, at $4.051 per proof gallon, packed.

I conclude as matters of law:

1. The imported merchandise in its condition as imported is not similar for value purposes to merchandise sold in the United States.

2. That there is no United States value, as defined in section 402 (f) of said act.

3. It having been agreed that there is no foreign or export value for said merchandise, as defined in section 402 (c) and (d) of the Tariff Act of 1930, as amended, *supra*, and plaintiff having conceded that, if the court finds that no United States value existed at the time of exportation, the appraised value is correct, the appraised value is the proper value for the merchandise.

Judgment will be rendered accordingly.