(C. D. 1975)

AMERICAN TIME PRODUCTS, INC. *v.* UNITED STATES (VIBROGRAF CORP., Party in Interest)

United States Customs Court, Second Division

(Decided March 20, 1958)

*Cann, Taylor, Lamb & Long* (*Laurence F. Casey* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.
*Julius S. Impellizzeri* for the party in interest.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: In the exercise of a privilege granted to plaintiff herein by section 516 (b) of the Tariff Act of 1930 (19 U. S. C. § 1516 (b)), as amended by the Customs Administrative Act of 1938 (52 Stat. 1077), and Public Law 773, 80th Congress (62 Stat. 869), the American manufacturer protested the classification and assessment with duty by the collector of customs of an importation of merchandise by the party in interest of a class or kind manufactured by it.

For a ready understanding of the basis of this action, the text of section 516 (b), as amended, *supra*, is here set forth:

(b) The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon, designated imported merchandise of a class or

kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary decides that the classification of, or rate of duty assessed upon, the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform the complainant, and such rate of duty shall be assessed upon all such merchandise entered for consumption or withdrawn from warehouse for consumption after thirty days after the date such notice to the collectors is published in the weekly Treasury Decisions. If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant. If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise. Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port. The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated. Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. Notwithstanding such protest is filed, merchandise of the character covered by the published decision of the Secretary, when entered for consumption or withdrawn from warehouse for consumption on or before the date of publication of a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, rendered under the provisions of subsection (c) of this section, not in harmony with the published decision of the Secretary, shall be classified and the entries liquidated in accordance with such decision of the Secretary, and, except as otherwise provided in this chapter, the liquidations of such entries shall be final and conclusive upon all parties. If the protest of the complainant is sustained in whole or in part by a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, merchandise of the character covered by the published decision of the Secretary, which is entered for consumption or withdrawn from warehouse for consumption after the date of publication of such court decision, shall be subject to classification and assessment of duty in accordance with the final judicial decision on the complainant's protest, and the liquidation of entries covering such merchandise so entered or withdrawn shall be suspended until final disposition is made of such protest, whereupon such entries shall be liquidated, or if necessary, reliquidated in accordance with such final decision.

The subject merchandise consists of certain Vibrografs and parts thereof which were classified by the collector of customs as articles having as an essential feature an electrical element or device within the purview of paragraph 353 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (86 Treas. Dec. 121, T. D. 52739),

and duty was imposed thereon at the rate of 13¾ per centum ad valorem.

The original protest claim of plaintiff is that said articles "are properly dutiable at the rate of $2.25 each plus 35 per cent ad valorem plus 12½ cents for each jewel, pursuant to the provisions of paragraph 368 (a) item (23), Tariff Act of 1930, as modified (19 U. S. C. A. § 1001)."

A motion to amend the protest was subsequently made and was taken under advisement by the court. By said amendment, plaintiff alleges alternatively "that the goods in question are properly dutiable at the rate of $2.25 each, plus 32½% ad valorem, plus 12½¢ for each jewel pursuant to paragraph 368 (a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, 86 Treas. Dec. 121."

From the proceedings before the Secretary of the Treasury, as reported in 90 Treas. Dec. 365, T. D. 53942, the following appears—

On May 10, 1955, pursuant to the provisions of section 516 (b), Tariff Act of 1930, as amended, the duly authorized attorneys for the American Time Products, Inc., New York 36, New York, domestic manufacturer of a machine known as the Watch Master, the function and purpose of which is substantially the same as the Vibrograf, were advised by the Bureau of Customs that it is the practice of the Customs Service to classify the Vibrograf under the provision for articles having as an essential feature an electrical element or device, wholly or in chief value of metal, not specially provided for, in paragraph 353, Tariff Act of 1930, as modified, with duty at the rate of 13¾ percent ad valorem.

In a complaint dated June 3, 1955, the domestic manufacturer referred to has through his attorneys taken exception to the practice above set forth, and contends that the Vibrograf is a time-measuring, time-indicating, and time-recording instrument as well as a mechanism for regulating or controlling the speed of drums and for recording, indicating, or performing an operation or function at a predetermined time or times, and therefore classifiable under the provisions of paragraph 368 (a), Tariff Act of 1930, as modified, with duty at the rate of $2.25 each plus 35 percent ad valorem plus 12½ cents for each jewel.

We here set forth the pertinent provisions of paragraph 368 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368), as modified:

Paragraph 368 (a) (1) (2), as modified by the Torquay protocol, *supra*, supplemented by Presidential notification, 86 Treas. Dec. 337, T. D. 52820:

Clocks, clock movements, including lever movements, time-keeping, *time-measuring, or time-indicating mechanisms, devices, and instruments, and any mechanism, device, or instrument intended or suitable for measuring or indicating time* (* * *), whether or not in cases, containers, or housing [italics supplied]:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Valued over $10 each (* * *)---------------------------- $2.25 each and 32½% ad val.

Any of the foregoing containing jewels shall be subject to an additional cumulative duty of-------------------- 12½¢ for each jewel.

Paragraph 368 (a), as modified by the supplementary trade agreement with Switzerland, 90 Treas. Dec. 174, T. D. 53832:

Clockwork mechanisms, and any mechanism, device, or instrument intended or suitable for measuring distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or *for regulating*, indicating, *or controlling the speed of* arbors, *drums*, disks, or similar uses, *or for recording time, or for recording, indicating, or performing any operation or function at a predetermined time or times*, all the above (* * *) [italics supplied]:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Over $10_____ $2.25 each and 35% ad val.

Any of the foregoing "other" mechanisms, devices, or instruments containing jewels shall be subject to an additional cumulative duty of_____ 12½¢ for each jewel.

Inasmuch as plaintiff relies primarily upon its claim that the Vibrograf is a time-measuring, time-indicating, or time-recording instrument within the scope of paragraph 368 (a) and such contention was made in its complaint to the Secretary of the Treasury, its motion to amend the protest does not enlarge the grounds of its original contentions, although there is a slight variation in the ad valorem rate applicable.

The motion to amend the protest above referred to is, therefore, granted.

The evidence of record in this case consists of the testimony of four witnesses who appeared on behalf of the plaintiff and three witnesses for the party in interest, together with the following exhibits:

Introduced by the plaintiff:

Exhibit 1—Vibrograf, Model VS–32.
Exhibit 2—Vibrograf, Model VS–390.
Collective exhibit 3—Seven pieces of literature used or distributed by the Vibrograf Corp.

Introduced by the party in interest:

Exhibit A—A handbook published by American Time Products, Inc., dealing with the operation of the Watch Master watch-rate recorder, which mechanism it was agreed by the parties is the same in general principle as the Vibrograf in issue.

Exhibits B and C—Pieces of tape illustrating the printed record produced by a Vibrograf.

It has been pointed out by the parties hereto that exhibits 1 and 2 represent two different models of Vibrograf, the VS–32 being the model which was the subject of the complaint to the Secretary of the Treasury (T. D. 53942, *supra*) and the VS–390 being the subject of the instant protest. It has been agreed, however, that both models are similar in operation, although there are some differences in internal circuit which are not pertinent here.

The witnesses who testified for the respective parties were for the most part exceptionally well qualified by virtue of their education and experience, and there is no difference of opinion as to the operation of a Vibrograf, also referred to as a watch-rate recorder or a watch testing machine, which we shall now describe.

As a first step, it is necessary to determine the "beat" of the watch or clock to be tested from whatever information may be obtained from the manufacturer thereof, or from manuals. Knowing the beat of the watch, the operator sets the Vibrograf to operate accordingly. The standard beat is 18,000 per hour. The timepiece is placed in a microphone connected to the Vibrograf. The watch ticks are picked up by a microphone. There is a piece of Rochelle salt or other material adjacent to the button that rests against the watch. The sounds are translated into electrical pulses which are fed through an amplifier and "pulsed" by a thyratron trigger tube. The latter depresses a printer bar which extends across the paper perpendicular to its direction of travel. Under the printer bar is a raised helix which traverses the paper 30 times per second. The paper is fed through the machine and the printer bar covered by a typewriter ribbon makes a mark on the paper where it engages the raised portion of the helix. If the helix is in the same phase relationship with the ticks as the paper emerges, a straight line parallel to the edge of the paper will be produced. A straight line indicates that the watch is neither gaining nor losing. If the line should angle to the right or to the left, it would be an indication that the timepiece under test was running fast or slow. When the paper passes over a reading screen or disk, parallel lines of light are thrown on the paper which lines, by the turn of a knob, can be made parallel to the line of marks printed on the paper and the rate of deviation of the watch, fast or slow, can be read in seconds per 24-hour period from a calibrated scale printed around the edge of the reading disk.

In addition to letting a watchmaker know if the watch being tested is fast or slow with relation to its standard frequency, the Vibrograf enables its users to analyze the performance of watch and clock movements. One familiar with the Vibrograf can tell from the printed tape it produces while in operation whether a tooth on an escape wheel is damaged, whether the balance of the timepiece is knocking, whether there is a faulty or dirty escapement, or the existence of other faults or defects in the watch or clock which may cause it to vary from zero in its operation. The Vibrograf, therefore, not only indicates whether or not the timepiece being tested varies from the standard in its timekeeping qualities, but also indicates to the watchmaker the presence of any faulty or defective parts in the mechanism.

There does not appear to be any conflict between the parties as to what the Vibrograf is and the function it performs. It is not disputed that by the use of the Vibrograf the "rate" of a watch or clock may be determined and the watchmaker be enabled to adjust the movement to the standard. The word "rate," in this connection, is used to mean the number of seconds per 24 hours a watch or clock is running either fast or slow. The difference of opinion between the parties hereto arises from opposing views as to what the operation of a Vibrograf constitutes. The plaintiff contends it is a measuring, indicating, or recording of time. The party in interest takes the position that it is not.

It is true that in the operation of a Vibrograf it is necessary to insert a watch or clock to be tested into the mechanism, and it is evident that said watch or clock in itself is a mechanism or device to measure and indicate time. However, the Vibrograf, with which we are here concerned, does not perform a like function of measuring or indicating time, but serves to compare the tick of the timepiece under test with the constant frequency of the quartz crystal oscillator in the Vibrograf for the purpose of finding the variances, if any, from the standard beat of the watch or clock being tested. The Vibrograf is not concerned with the measuring, indicating, or recording of time, as such, but was designed to record the ticks of a watch or clock which, in turn, provide the means of determining the rate of the watch or clock; the "rate" being the number of seconds of time the timepiece is fast or slow over a 24-hour period.

It is argued by plaintiff herein that since the Vibrograf makes a comparison between the ticks of a watch being tested with the standard oscillator it "measures" the interval between ticks of a watch, and, by marking such intervals on a paper tape, there is measurement and recording of time within the meaning of paragraph 368 (a) of the tariff act. It is further contended by plaintiff that the imprinting on the paper tape of the different spacing and positions of the marks corresponding to the tick sounds is a recording of the duration between such sounds. With this view we are not in accord, inasmuch as the Vibrograf itself does not measure or record time, but merely records the beat of the watch which is in the process of being tested.

Furthermore, it cannot be said to be a recording of time since one either experienced or inexperienced in the use of a Vibrograf would be unable to read or understand timewise any individual mark appearing on the paper tape produced by the machine.

In support of its contention that the Vibrograf should be classified as a time-measuring, time-indicating, or time-recording mechanism or device within the purview of paragraph 368 (a), *supra*, plaintiff refers, *inter alia*, to the case of *Harold M. Geller* v. *United States*, 32

Cust. Ct. 299, C. D. 1617, wherein certain electric battery testers, which were classified by the collector as devices intended or suitable for measuring the flowage of electricity in paragraph 368 (a), as modified, were claimed to be classifiable as electrical articles, such as portable tools, in paragraph 353, as modified. The battery testers were equipped with an ammeter and a voltmeter as essential adjuncts, and the devices, in the process of testing batteries, measured the flowage of electricity. Following *Ferranti, Ltd.* v. *United States*, 69 Treas. Dec. 609, T. D. 48242, which stated that paragraph 368 (a) was intended to cover electrical measuring instruments "of any kind whatsoever" plaintiff's claim was overruled, and the decision of the collector was affirmed.

The *Geller* case is clearly distinguishable from the present one in that the Vibrograf, while it serves to determine the rate of a watch or clock, which latter admittedly is an instrument or device for measuring or indicating time, is not concerned with time as such but with the variance of the watch or clock beats from normal. Within the Vibrograf itself, which is the subject merchandise, there is no time-measuring or time-indicating or time-recording device constituting essential parts thereof, analogous to the ammeter and voltmeter which were essential equipment of the battery testers in the *Geller* case, *supra*.

Plaintiff, in its brief, also cites the case of *Alfred Hornung* v. *United States*, 31 Cust. Ct. 126, C. D. 1558, in which pedometers of a type known as step counters, classified by the collector of customs as distance-measuring devices in paragraph 368 of the Tariff Act of 1930, were held by the court to be machines, not specially provided for, in paragraph 372 of said act, as modified. After quoting the definitions of "pedometer" from various lexicographic authorities, it was stated:

From the foregoing definitions, it may be deduced that there are pedometers which perform a twofold function of recording the number of steps taken in walking and also measuring the approximate distance covered. It is also to be concluded that there are other pedometers which merely record the number of steps taken. The fact that an article may be shown to be a pedometer does not necessarily carry with it the conclusion that it is a distance-measuring device.

When consideration is given to the oral stipulation of counsel for the parties, quoted above, it is obvious that the imported articles perform but one of these functions, namely, to record the number of steps. It differs from the American-made pedometer in evidence as illustrative exhibit 3 in that it contains no device within the mechanism which, when set to correspond to the length of the user's step, will indicate on a dial so calibrated the mileage traveled. It is, therefore, apparent that the articles in controversy are not distance-measuring devices but are, in fact, step counters, which are not provided for in paragraph 368 (a), *supra*.

Consideration has been given to the point raised in the brief of defendant that, even granted that the imported articles are merely step counters, it is a mere mathematical operation after gauging the length of a user's step to calculate the

mileage covered. We think this argument is untenable for the reason that the controverted article in the condition as imported is not equipped, as is illustrative exhibit 3, with a device which enables the recording of distance, and it is in the condition as imported that merchandise must be classified. *American Sugar Refining Co.* v. *United States*, 181 U. S. 610.

It is our view that the *Hornung* case, *supra*, rather than supporting the claim of plaintiff, affirms the action of the collector of customs in his classification of the instant merchandise. The Vibrograf registers the ticks of a watch or clock in the form of a mark on a paper tape for a period of time, usually 24 hours. The pedometer indicates numerically the number of steps taken in walking. In each instance, were other factors known, it would be a mere mathematical calculation to measure the passage of time from the paper tape, produced by the Vibrograf, and to measure the distance covered in the case of the pedometer. As in the *Hornung* case, *supra*, so too here, by analogous reasoning, it is the view of the court that the Vibrograf was designed and intended to register the ticks of a watch or clock and to indicate its variance from the normal rate of a standard frequency oscillator. Although the Vibrograf may be said to test a timepiece which measures and indicates time, the imported article itself performs neither of these functions but merely records the rate of the watch or clock and provides the watchmaker with information as to whether the timepiece is running fast or slow.

By use of a Vibrograf, the ticks of a watch are recorded on a paper tape. The mark made by each tick is of little or no significance in and of itself. It is to obtain a succession of these marks that the Vibrograf was designed and is used which, when said marks are produced in relation to a standard oscillator, results in the giving of a rate of the tested timepiece. Although "rate," in this sense, is determined in terms of time, rate is not a measuring, recording, or indicating of time itself. It is a statement of a relationship between the tick of a watch under test and the frequency of the standard oscillator contained in the Vibrograf.

Consideration has been given to the numerous other cases cited in the briefs of both parties, but we find nothing therein adverse to the conclusion we have reached.

In passing, the court wishes to note that the case was ably tried and studiously briefed by counsel for the respective parties herein.

From the record before us, it is the opinion of the court that the Vibrograf in issue does not measure, indicate, or record time in the sense that those terms are used in paragraph 368 (a) of the Tariff Act of 1930, as modified, *supra*, and, therefore, is not entitled to classification therein. It is agreed by the parties hereto that the device in controversy is an article having as an essential feature an electrical

element or device. Therefore, the classification of the Vibrograf, by the collector of customs, as such an electrical article within the purview of paragraph 353 of said act, as modified, *supra*, is affirmed, and judgment will be entered accordingly.