(A. R. D. 77)

UNITED STATES *v*. FREEDMAN & SLATER, INC.

Entry Nos. 704314; 704313.

Second Division, Appellate Term

(Decided July 23, 1957)

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Henry J. O'Neill*, trial attorneys), for the appellant.

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel); *Barnes, Richardson & Colburn* (*Hadley S. King* of counsel); and *Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel), associate counsel; for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This application for review of the decision and judgment of the trial court was filed under the provisions of 28 U. S. C. (1946 ed., Supp. III) § 2636 (a). The merchandise which is the subject of this review consists of two shipments of wet salted "frigorifico" sound bull hides exported from Buenos Aires, Argentina, and entered at the port of New York. The hides covered by both appeals

717

were entered at the unit invoice value of 78 Argentine pesos per 100 kilograms of weight, plus certain dutiable charges, as invoiced. These charges are not here in issue. In appeal No. 171098–A, the hides were appraised at 78 Argentine pesos per 100 kilograms, plus 6.46 per centum, plus the aforesaid charges. In appeal No. 171699–A, the hides were appraised at 78 Argentine pesos per 100 kilograms, plus 6.7778 per centum, plus the aforesaid charges.

On the summary sheet attached to each entry here in question appears the notation "Sec. 14.3 (e) C. R. 1943 applies." Said section is as follows:

(e) When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

It is apparent from the record herein, not challenged by either party, that the advance in value of 6.46 per centum and 6.7778 per centum was made by reason of the foregoing regulation.

This case was originally before us in *United States* v. *Freedman & Slater, Inc.*, 26 Cust. Ct. 582, Reap. Dec. 7974, in which we affirmed the decision and judgment of the trial court, holding, among other things, as follows:

By its two appeals herein, the appellee has attacked only the item of the appraisement represented by the addition to the entered value of the percentages of 6.46 and 6.7778, respectively. Under the holding of our appellate court in the *Freedman & Slater case, supra,* and *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, all other items of the appraisement are presumed to be correct and must stand as made by the appraiser.

In accordance with its appeals, appellee in the trial court only offered evidence tending to establish that the item of percentages made by the appraiser, hereinbefore set out, was not any part of the true value of the merchandise, and that such percentages were erroneously added by the appraiser. It is our view that the evidence before us conclusively establishes that the respective item of percentages added by the appraiser is not any part of the value of the merchandise and should not have been added to the value by the appraiser.

It is contended, however, by counsel for appellant that the appellee did not establish that hides in the condition of those imported were freely offered for sale in the principal market of Argentina for home consumption or for export to the United States. This same contention was made before the trial court, and was disposed of in the following language:

* * * This contention is contradicted by and inconsistent with the appraisement upon which defendant relies, for, being on the basis of foreign and export value, it presupposes the offer for sale in the foreign market of merchandise such as or similar to that here involved. Since the plaintiff herein challenged only the percentage advances of the appraisements, it was entitled to rely upon the presumption of correctness attaching to all other items of the appraisements, including the presumption that merchandise such as or similar to that imported was offered for sale in the country of exportation under the terms of the valuation statute. *United States* v. *Fritzsche Bros., Inc.* 35 C. C. P. A. 60, C. A. D. 371. Moreover, the record shows that there was no allowance made in the foreign market on account of

moisture content, nor was there any standard moisture content, nor did the price in the foreign market of wet salted frigorifico sound bull hides in-crease by reason of loss of weight due to evaporation of moisture or shrinkage.

\*     \*     \*     \*     \*     \*     \*

In the present case the evidence is conclusive that the involved hides were not improved or advanced in value by reason of the loss in weight during the voyage of importation. Therefore, the hides in question had *not* improved in quality, becoming a higher grade of hides by reason of the loss in weight during the voyage of importation. \* \* \*

\*     \*     \*     \*     \*     \*     \*

Counsel for appellant assigns as error various other rulings made by the trial court as to the admission and exclusion of evidence, all of which have had our careful consideration. While we are not in entire accord with the ruling on some of these motions, yet each of them was addressed to the sound, legal discretion of the trial court, and, based upon an examination of the entire record, we are unwilling to hold that in making the rulings complained of, the trial court abused its discretion.

The Government took an appeal from our judgment in that case. The Court of Customs and Patent Appeals in *United States* v. *Freedman & Slater, Inc.*, 39 C. C. P. A. (Customs) 194, C. A. D. 486, reversed the judgment of this court and remanded the case to this court. In so doing, it stated in part as follows:

\* \* \* We believe, however, that in the disposition of this appeal it is necessary to consider but one of those assignments; namely, that the appellate division erred "In sustaining the action of the trial court with respect to the exclusion of evidence offered by appellant herein." That assignment of error is directed to the refusal of the trial court to receive evidence offered by counsel for the Government relative to the sale of "such or similar" hides in the Argentine, and to the effect that the imported hides had undergone certain material changes in transit and had consequently increased in value by the time they were imported nto this country.

\*     \*     \*     \*     \*     \*     \*

We have examined the entire record with great care and are firmly of the opinion that the testimony sought to be presented by the Government was relevant and material to a clear understanding and proper disposition of the issues involved and should have been admitted.

Accordingly, the judgment of the appellate division is hereby *reversed* and the cause *remanded* for further proceedings consistent with the views expressed herein.

Following the decision by the Court of Customs and Patent Appeals, *supra*, this court remanded the case to the trial court for further proceedings consistent with the decision of the appellate court. As a result of a pretrial conference and at a trial at which documentary evidence was received, the trial court rendered another decision, again sustaining the entered values. A motion for rehearing was made by the Government and denied by the trial court. The Government then filed an application for review. Briefs were filed by both sides and oral argument was made before the second division. The Government moved the second division to remand this case to the trial court for all purposes, to the granting of which motion counsel

for the importers consented. On November 10, 1955, this court entered the following order:

Ordered, Adjudged, and Decreed that the said judgment be, and the same is hereby, set aside and vacated, and the case is remanded to the trial court for all purposes.

When the case was again called for trial, pursuant to the above order, the Government offered in evidence three Treasury reports, which were marked collective exhibits 19, 20, and 21. The Government also offered a summary of these three reports, which is also a part of the record. Based upon the record as thus augmented, and, apparently, after the Government had offered all the evidence it cared to offer, the trial court, as it had done in its previous decision, held that the additions for shrinkage during the voyage of importation made by the appraiser formed no part of the proper dutiable value of the subject hides. In considering the additional evidence, the trial court made the following observations:

The matter contained in collective exhibits 19 to 21, inclusive, consists of the detailed results of interviews, and answers to questions formulated by defendant's counsel and put by or through the Treasury representative to officials of the five large frigorificos accounting for 90 per centum of all hides sold for home consumption or export in Argentina, as well as to Argentine Government officers.

The questions went into minute detail as to many matters which are not material to the issue here, such as the situation which would obtain if the delivered hides contained *excessive* moisture. Inasmuch as the imported hides had *lost* moisture, and the defendant contends that the per unit value of the hides had increased as the result of that loss, inquiry as to the effect of *excessive* moisture hardly seems germane to the issue.

However, as reported in collective exhibits 20 and 21, one of the questions propounded by defendant's counsel through the Treasury representative reached the basic issue involved. This question, denominated "Question No. 1," was put to the officials of the five largest frigorificos in Argentina and reads as follows:

Question No. 1. When *shrinkage* takes place, or when hides contain *less* humidity than normal, has it been the custom generally to adjust the *weight* of the hides? Would there result a higher price per unit or a weight adjustment? [Italics quoted.]

Apparently only four replies were received. Three of these answered "No" to both parts of the question. However, each respondent went further and indicated that, if the *average* or *extreme* weights should not be in line with those stipulated at the time of sale, an adjustment would be made *in favor of the buyer*. This, of course, indicates that shrunken hides were worth less than hides of normal moisture content.

The fourth reply reads as follows:

When hides are delivered containing less humidity than normal, *neither the weight of the hides nor the price was adjusted*, in other words, the buyer obtained the benefit of the drier condition of the hides. If because of the less than normal moisture carried by the hides the average weights of the delivery was not in line with the estimated average weight or extreme average weights stipulated at time of sales, adjustment was made as will be explained hereunder in our reply to query (4). * * *

\*          \*          \*          \*          \*          \*          \*

It will be seen, therefore, that the first sentence in the reply quoted above answers the real question at issue in this case, i. e., that, when hides were delivered containing less humidity than normal (namely, shrunken hides), *neither the weight of the hides nor the price was adjusted.* The second sentence, relating to the average and extreme weights, is not probative of any fact material to the issue, *because there is no issue as to average and extreme weights here involved.*

*        *        *        *        *        *        *

To recapitulate, it clearly appears, from the foregoing, that *no* adjustments in price were made on account of loss of weight by shrinkage and that such adjustments as were made were on the basis of delivery of hides which were not within the stipulated average and extreme weight. It does not appear that the hides in issue were outside the range of average and extreme weights called for in the contract (as a matter of fact, the contract did not mention average and extreme weights), but, even if they were, it clearly appears that the adjustment would be *in favor of the buyer*, i. e., the price per unit of shrunken hides would be *lower*, not higher, than called for in the contract.

As heretofore indicated, when this case was returned to us by the appellate court, the Government was given every opportunity to introduce any and all the evidence it desired. From the foregoing, it is clear, however, that the evidence offered by the Government at the second hearing primarily supports the contention of the appellee herein, rather than establishing the contention of appellant, in that it shows that if and when an adjustment was made in the weight of the hides, because they were delivered containing less humidity than normal, such adjustment was always in favor of the buyer, that is, the price per unit of shrunken hides would be lower, not higher, than called for in the contract. In this connection, it should be remembered that this fact is established by evidence offered by the Government, not the importer.

In the case of *United States* v. *Schroeder & Tremayne, Inc.*, 41 C. C. P. A. (Customs) 243, C. A. D. 558, in dealing with the same question we have here, except the merchandise was sponges, not hides, our appellate court said:

The record is replete with testimony that sponges are never bought or sold according to their moisture content. There was substantial evidence before the trial court to clearly show that sponges are always purchased by the pound in the country of exportation, and that the per pound price is not influenced in any way by the moisture content of the sponges. If we accept this as true, and we must since it is not contradicted by any evidence, then it appears that the conclusion of the lower court was correct. If the moisture content of the sponges does not affect their per pound price in the principal market, then regardless of whether a particular bale of sponges gained or lost weight due to its moisture content, the per pound price of the bale would remain constant. Therefore, we must conclude that the entered unit values represent the correct dutiable values of the imported sponges in their condition as imported. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371.

We have considered appellant's argument that the importers have failed to prove that the involved sponges, in their condition as imported, were sold at the invoiced unit price. However, we have ruled that the challenging of one item of an appraisement does not destroy the presumption of correctness attach-

ing to all the other items of the appraisement. *United States* v. *Fritzsche Bros., Inc., supra*; *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241. Therefore, in proving that the percentage additions made by the appraiser were wrong appellees did not destroy the remainder of the appraisement, the invoiced unit value, which is presumed to be correct. Further, we consider that appellees did prove that the invoiced unit values were the proper values for appraisement by proving that the moisture content was not a factor in determining the selling price in the principal market.

Upon a full consideration of this record, we find as fact:

1. That the merchandise involved in these two appeals is wet salted frigorifico sound bull hides, exported from Buenos Aires, Argentina, and entered at the port of New York.

2. That, between the date of exportation from Argentina and the date of importation into the United States, the hides in these shipments lost weight, due to the evaporation of moisture during the voyage of importation, to the extent of the percentages of landed weights indicated by the appraisements herein.

3. That, at the date of exportation of the subject hides, Buenos Aires, Argentina, was a principal market for the sale of wet salted frigorifico sound bull hides, such as or similar to those here in question, both for home consumption and for exportation to the United States.

4. That, at the date of exportation, wet salted frigorifico sound bull hides, which had shrunk to the extent of the percentages reported by the appraiser, such as and similar to the involved hides, were freely offered for sale for home consumption and for exportation to the United States to all purchasers in Buenos Aires, in the usual wholesale quantities and in the ordinary course of trade, and that the price did not vary according to the quantity purchased.

5. That, in the offer for sale, and in the sale, of such or similar hides, moisture content was not an element, either expressed or implied, affecting the price thereof.

6. That the price at the date of exportation of said hides at which such or similar hides were freely offered for sale within the provisions of section 402 of the Tariff Act of 1930, as amended, was 78 Argentine pesos per 100 kilograms, plus dutiable charges, as invoiced.

We, therefore, conclude as matter of law:

1. That the foreign and export value of the involved hides, within the meaning of said section 402, were the same.

2. That the proper basis for determining the value of these hides was such foreign or export value.

3. That such foreign or export value, in each instance, was the entered value.

The judgment of the trial court is, therefore, affirmed. Judgment will be rendered accordingly.