(Reap. Dec. 10909)

GEHRIG, HOBAN & Co., INC. *v.* UNITED STATES

Entry No. 910392.

(Decided March 8, 1965)

*Busby & Rivkin* (*Saul L. Sherman* and *David Busby* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Richard J. Kaplan* and *Daniel I. Auster,* trial attorneys), for the defendant.

Ford, Judge: The appeal for reappraisement listed above is brought to ascertain the proper dutiable value of two Eleroda D-1 sparking machine tools, which were imported from Switzerland complete with accessories and tools. The merchandise was entered and appraised at a value of $14,133 for each machine, including the accessories and tools. Appraisement was made on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. The appraisement represents the invoiced unit value which includes certain dutiable charges, less certain nondutiable charges. Included within the dutiable charges is the sum of $2,496.45 for each machine, which sum defendant contends represents a 15 per centum selling commission and which is, therefore, part of the dutiable value.

The parties are in agreement that the involved merchandise is not included in the final list, published by the Secretary of the Treasury in T.D. 54521 (93 Treas. Dec. 14), pursuant to the Customs Simplification Act of 1956. The parties are also in agreement that the proper basis of appraisement is export value, as defined in section 402(b) of said act, as amended, *supra.*

Plaintiff contends that the proper export value is $11,637 for each machine. The difference between the two values is represented by the sum of $2,496.45 referred to, *supra.*

The pertinent portions of the statutes involved herein are as follows:

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, *supra:*

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, *supra:*

(f) Definitions.—For the purposes of this section—
    (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
        (A) to all purchasers at wholesale, or
        (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise.
    without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are

imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

\* \* \* \* \* \* \*

The record herein consists of the testimony of three witnesses called on behalf of the plaintiff and one called on behalf of the defendant together with numerous exhibits.

Plaintiff, in its brief, asserts two main points. The first point is that the sum of $2,496.45 was a 15 per centum discount and not a commission; the second point revolves around the admissibility of certain reports of customs agents covering interviews and examination of records of people and firms within the confines of the United States.

Defendant likewise asserts two main points, number one being that the appraisement of the imported merchandise is not separable. Point number two is the failure to overcome the presumption of correctness.

Since the parties to this litigation are in agreement that the proper basis of appraisement is export value under section 402(b) of the Tariff Act of 1930, as amended, *supra*, it is deemed necessary to first consider defendant's point one, that the appraisement is not separable. This is so since if the importer is contesting only one element of a separable appraisement, he is entitled to rely upon the presumption of correctness attaching to the other elements of the appraiser's decision under the principles enunciated in *Kobe Import Co.* v. *United States*, 28 Cust. Ct. 586, Reap. Dec. 8102; *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371; *United States* v. *Schroeder & Tremayne, Inc.*, et al., 41 CCPA 243, C.A.D. 558; *United States* v. *Freedman & Slater, Inc.*, 39 Cust. Ct. 717, A.R.D. 77; *Paramount Import Co., Inc.*, et al. v. *United States*, 40 Cust. Ct. 672, Reap. Dec. 9061, affirmed *Same* v. *Same*, 44 Cust. Ct. 702, Reap. Dec. 9697.

An examination of the invoices covering the merchandise before the court, by virtue of the red checkmarks placed thereon by the appraiser's office, establishes that the appraiser utilized the breakdown of charges and held dutiable the items listed as packing and agent's commission, while holding the items listed as freight, insurance, customs expenses, and customs duties as nondutiable. The total unit invoice price in-

cluded these charges. Therefore, in fact, the appraiser found the value of the merchandise to be the invoiced unit value, plus the items indicated, *supra*, as being dutiable, less the items indicated, *supra*, as being nondutiable. Such appraisement, in my opinion, falls squarely within the principles enunciated in the above-cited cases. Accordingly, the appraisement is separable, and plaintiff is entitled to rely upon the presumption of correctness attaching to all the elements, except the items indicated as commission.

The next consideration is whether the importer is, in fact, the selling agent of the manufacturer or an independent purchaser having been granted exclusive territorial areas within the United States. Although the basis of appraisement, export value, is not contested, I consider that the new language utilized in section 402(b), as amended, *supra*, should be reviewed. The mere fact that plaintiff has an exclusive distributorship or the price is established is not necessarily a bar to export value under the definitions set forth in section 402(f)(B). Under this definition, merchandise might be freely sold or, in the absence of sales, offered for sale, in the ordinary course of trade to one or more selected purchasers at wholesale, provided the price fairly reflects the market value of the merchandise. The evidence elicited at the trial from Mr. Jaques, American representative of the manufacturer, establishes that the price at which the involved machine is sold in the home market is approximately $6,100 and that it was sold to other European countries at a 5 per centum to 15 per centum higher price than in Switzerland, but, nevertheless, lower than the price to the United States. Under the principles set forth in *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, the court deemed it pertinent and proper to consider the price in the home market for the purpose of ascertaining whether it fairly reflected the market value. I believe the evidence herein does establish the price as fairly reflecting the market value.

If, in fact, the importer herein was a purchaser under the new definitions set forth in section 402(f), *supra*, it would appear that said importer would be a selected purchaser at the wholesale price, having no restrictions as to the disposition or use of the involved merchandise, and any restrictions as to the areas in which or the price at which the merchandise may be sold are not such restrictions as would eliminate an export value. This is particularly so since the price fairly reflects the market value of the merchandise.

The testimony adduced at the trial by Mr. Moreinis, together with plaintiff's exhibit 2 and defendant's exhibits L through P, establishes to my satisfaction that the importer herein is, in fact, an independent purchaser rather than an agent of the manufacturer. Defendant's exhibit L, a letter of the manufacturer to the predecessor of the importer

involved herein, asks for instructions rather than directing the importer as would be the case with an agent. Likewise, defendant's exhibit N, a letter from the manufacturer to the predecessor of the importer, in conjunction with plaintiff's exhibit 2, indicates the independence of the importer in that the importer refused to accede to a suggestion that the customer pay the manufacturer which, in turn, would remit the 15 per centum to the importer. The testimony of Mr. Moreinis unequivocally states that his firm purchases the imported machines, arranges the terms of payment, and makes payment to the manufacturer, all within its own discretion, and not subject to approval by the manufacturer. These actions clearly do not indicate an agency relationship. The importer herein was financially responsible for any orders placed for a machine whether or not there was a cancellation. This is another factor which affirms my belief that the importer is not an agent.

Evidence of the relationship of buyer and seller between the importer and manufacturer is further confirmed by the numerous exhibits attached to and relating to paragraph 4 of plaintiff's collective exhibit 1. These documents relate to the chronology of the transactions pertaining to the two machines involved herein. As to the machine bearing serial number 10462, the evidence referred to, *supra*, establishes the following facts:

1. On June 16, 1960, the Century Oxford Manufacturing Corp. ordered from the importer one Eleroda Model D–1, Electro Erosion Machine.

2. On June 17, 1960, a deposit of $150 was made by Century Oxford Manufacturing Corp. to the importer.

3. On June 18, 1960, the importer sent his order to the manufacturer.

4. On June 23, 1960, the manufacturer acknowledged this order.

5. On September 21, 1960, the sum of $150 deposit was returned to Century Oxford Manufacturing Corp., pursuant to this letter of September 1960, which is not in evidence, due to the cancellation of this order for the machine.

6. On December 9, 1960, Newark Die Co., Inc., ordered one Eleroda, Model D–1, machine which was based on a 6 months' trial basis at a monthly rental, the rental of which was to apply against the purchase price if said company desired to purchase the machine after 6 months' trial.

7. A copy of the rental lease agreement, dated September 15, 1960, indicates the terms of said rental.

8. On January 13, 1961, an invoice was sent by the manufacturer to the importer indicating "for Century Oxford, Brooklyn."

9. Six invoices were sent by the importer to Newark Die Co., Inc., running from February 1961 through July 1961 for $500 each.

Monthly costs statements were also attached to plaintiff's collective exhibit 1.

10. On June 27, 1961, full payment for this machine was made. Receipt thereof was acknowledged on July 4, 1961.

11. On August 15, 1961, a final statement by the importer to Newark Die Co., Inc., for the purchase price of the machine, less $3,000 representing the six $500 monthly rental payments, was submitted.

The two outstanding factors in the above résumé are that while the customer was not billed for the total price of the machine until August 15, 1961, payment was made to the manufacturer in full on June 27, 1961. This would appear clearly to be a purchase and not a mere commission arrangement. In addition thereto, even though the original customer had canceled prior to delivery, September 19, 1960, the invoice of the manufacturer, dated January 13, 1961, indicated "for Century Oxford, Brooklyn." This is in line with the testimony of Mr. Moreinis that they did not advise the manufacturer of any changes of customers due to cancellations. This also is clearly not in line with a principal-agent relationship.

In addition thereto, defendant offered exhibits A through J representing reports of agents who interviewed persons or firms within the United States. Objection having been made to the receipt in evidence of these reports and the trial judge having reserved the ruling for me, I note that, in the brief filed on behalf of plaintiff, it has withdrawn its objections to exhibits D and F for identification. Defendant's exhibits D and F for identification are, therefore, received in evidence as defendant's exhibits D and F. Said exhibits D and F tend to confirm the same buyer-seller relationship and purchasing and distributing arrangement of the two firms covered by said exhibits as relate to the importer involved herein.

In view of the foregoing and based upon all the facts presented in this case, I find there is substantial evidence which establishes that a buyer-seller relationship existed between the parties and that the importer herein was a selected purchaser at wholesale, who purchased at a price which fairly reflected the market value of the involved merchandise.

Accordingly, I find that the sum of $2,496.45 per machine represents a 15 per centum resale discount which is not properly part of the dutiable value.

Even though I have come to the above conclusions, since the trial judge reserved rulings on certain evidentiary matters, a final disposition as to these motions must be made. With respect to the Government agents' reports, defendant's exhibits A through C, E, and G through J for identification, which represent interviews with various persons throughout the United States, were objected to by plaintiff herein on the grounds that it was deprived of its right to have an

opportunity for cross-examination of the defendant's witnesses, pursuant to 28 U.S.C., section 2634. While the reports of customs agents may be received in evidence under the provisions for reappraisement proceedings of 28 U.S.C., section 2633, such permission is entirely discretionary with the court. In this instance, the reports which are objected to cover various firms located in Buffalo, N.Y.; Dayton, Ohio; Los Angeles, Calif.; Baltimore, Md.; Oak Park, Ill.; Denver, Colo.; Seattle, Wash.; Boston, Mass.; and Royal Oak, Mich. The purpose for which these reports were submitted, as alleged by defendant, was merely to establish that there was some question as to the relationship between the various exclusive distributors in the United States and the manufacturer. Except as to exhibit B for identification, which will be discussed separately, *infra*, all of the cities are within the jurisdiction of this court which regularly holds hearings throughout the United States. Ordinarily, agents' reports are made and cover interviews with companies in foreign countries, and the evidence or witnesses are, therefore, not readily available. Here, however, this is not the fact, and since this court regularly holds hearings throughout the United States, I feel that defendant's exhibits A, C, E, and G through J for identification are not admissible. Justice is better served in permitting cross-examination of witnesses rather than receiving reports of agents which are admittedly hearsay and are admissible only as an exception to the hearsay rule, pursuant to 28 U.S.C., section 2633. With respect to exhibit B for identification, which covers an interview with the importer herein and specifically with Mr. Moreinis who testified herein, such report is admissible for the purpose of challenging the credibility of the witness, if in fact there is any discrepancy between the testimony of the witness in court and his prior interview.

At this point, may I state that I did not find any substantial difference between testimony adduced at the trial and that contained in said report. However, in view of the circumstances, exhibit B for identification may be received in evidence for this limited purpose.

Plaintiff having withdrawn its objection to exhibit K for identification, the personal notes of Examiner Golub made in the ordinary course of his business, said exhibit K is hereby received in evidence as defendant's exhibit K.

Consideration has been given to all of the cases cited by counsel for the respective parties in their well-prepared briefs. Reference herein has been made only to those cases considered necessary to support the reasoning followed and the conclusion reached.

On the record herein, I make the following findings of fact:

1. That the merchandise involved in this appeal for reappraisement consists of two Eleroda D-1 electro-erosion metal cutting machines with various accessories, exported from Switzerland.

2. That each machine with its accessories was appraised at the total invoice price, less nondutiable charges (freight, insurance, and customs duties and expenses), but which included the sum of $2,496.45 representing the disputed 15 per centum discount.

3. That said machines and accessories are not included on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, pursuant to the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

4. That, on or about the date of exportation herein, the said machines and accessories were sold for exportation to the United States, by the manufacturer to its exclusive United States distributors at list price, less a 15 per centum discount, regardless of quantity ordered, which price included all costs of packing and shipping to the United States, as well as United States customs duties and expenses.

5. That, on or about the date of exportation to the United States, distributors purchased said machines and accessories for their own account and not as agents of the manufacturer.

I, therefore, conclude as matters of law:

1. That the export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for appraisement of the merchandise involved herein.

2. That said machines and accessories were on or about the date of exportation freely sold in the ordinary course of trade at the list price, less a 15 per centum discount.

3. That the export value of each machine with accessories is the appraised value, less the sum of $2,496.45, representing the 15 per centum discount.

Judgment will be entered accordingly.