UNITED STATES *v.* GEHRIG, HOBAN & CO., INC. (No. 5253)*

*C.A.D. 924.

United States Court of Customs and Patent Appeals, June 22, 1967**

*Barefoot Sanders*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Glenn E. Harris* for the United States.
*Busby and Rivkin* (*Saul L. Sherman*, David Busby of counsel) for appellee.

[Oral argument April 3, 1967 by Mr. Harris and Mr. Sherman]

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK***

WORLEY, Chief Judge, delivered the opinion of the court:

This is an appeal by the government from the judgment of the Third Division of the Customs Court, 56 Cust. Ct. 782, A.R.D. 204, affirming the judgment of the trial judge in reappraisement proceedings, 54 Cust. Ct. 538, R.D. 10909.

Whether the Appellate Division erred in that action involves the preliminary question of whether certain reports of customs agents were properly refused admission in evidence by the trial judge, as well as the ultimate question of whether the Appellate Division erred as a matter of law in agreeing with the trial judge that the export value of each importation is the appraised value less the sum of $2,496.45 representing a 15 percent discount.

The importations are two Eleroda D-1 electro-erosion metal cutting machines,[1] exported from Switzerland in January 1961 by the manufacturer, Ateliers des Charmilles of Geneva. Appellee acted as customs broker and importer of record for Triplex Machine Tool Corporation of Long Island City (Triplex).

The machines were appraised on export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. Appraisement was at the total invoice price, less certain non-dutiable charges (freight, insurance, customs duties and customs expenses), but not excluding the sum of $2,496.45 which represented 15 percent of the invoice price, designated as a "discount" and a "commission" on the commercial and

---

**Petition for rehearing denied October 5, 1967.
***Senior District Judge, Eastern District of Pennsylvania, sitting by designation.
[1] Heavy machine tools more fully described in *United States* v. *Gehrig, Hoban & Co., Inc.*, 52 CCPA 32, C.A.D. 853.

customs invoices, respectively. It is agreed by the parties that export value under section 402(b) is the correct basis for appraisement,[2] except that the importer contends the $2,496.45 sum is not dutiable.

On appeal for reappraisement, the trial court agreed with the importer, finding that Triplex was an independent purchaser which had been granted exclusive territorial areas within the United States, rather than a selling agent of the manufacturer. It held that the machines were sold by the manufacturer to its distributors at a 15 percent discount on list price, and that the sum of $2,496.45, corresponding thereto, should be deducted from the appraised value. The Appellate Division agreed.

The evidence offered by the importer includes testimony of the treasurer and general manager of Triplex, another employee of that company, and an employee of an American subsidiary of Charmilles, the Swiss manufacturer.

The government took the testimony of a customs examiner, and also offered 16 documentary exhibits designated A through O. The importer either did not object, or subsequently withdrew objections, to certain of those exhibits and they were admitted in evidence, together with certain other documentary exhibits offered by both parties. However, the importer made and maintained objections to seven of the exhibits, designated A, C, E, G, H, I and J, which were excluded by the trial judge. The Appellate Division found no error in that action and it is to those exhibits that the first issue relates.

Each of the excluded documents includes a letter from a customs agent to the Commissioner of Customs in response to a request that an investigation of certain operations of Charmilles in the United States be made for the Assistant Attorney General. The letters summarized interviews with Charmilles distributors in the United States. They were accompanied by documents pertaining to the information reported therein, including, in some cases, affidavits of persons who had been interviewed by the agents. The information in the exhibits relates to the manner in which machine tool dealers, other than Triplex, conducted sales of Charmilles' Eleroda machines.

In contesting exclusion of the documents, the government relies on section 2633 of Title 28 of the United States Code:

In finding the value of merchandise, in reappraisement proceedings before a single judge of the Customs Court, affidavits and depositions of persons whose attendance cannot reasonably be had, price lists and catalogues, *reports* or depositions *of* consuls, *customs agents*, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government *may be admitted in evidence*. Copies of official documents, when certified by an official duly authorized by

---

[2] The merchandise is not on the final list published by the Secretary of the Treasury at T.D. 54521.

the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents. (Emphasis supplied.)

Also considered by the tribunals below was the succeeding section, 2634(a):

(a) In any proceeding in the Customs Court, under rules prescribed by such court, the parties and their attorneys shall have an opportunity to introduce evidence, to hear and cross-examine the witnesses of the other party and to inspect all samples and all papers admitted or offered as evidence, except as provided in subsection (b) of this section. [a]

It is the government's position that section 2633 makes mandatory admission of customs agents' reports in reappraisement proceedings as exceptions to the hearsay rule even though they may contain evidence which cannot be subjected to cross-examination. It thus urges that no report of a customs agent which is relevant and material can be excluded solely on the ground of hearsay.

The trial judge deemed admission of such reports to be discretionary with the court. While the two judges sitting in the Appellate Division agreed that the trial court did not err in refusing to admit the excluded documents, they predicated their conclusion on different reasons. One judge observed that the excluded reports were made after the appraisement of the merchandise and considered them to be in the nature of accounts of pre-trial investigations, concluding they were not such reports of customs agents as were intended to be made admissible by section 2633. The other judge agreed with the reasoning of the trial judge.

The parties concede that the issue is one of first impression. We agree. Although both parties cite decisions in their arguments, none of those decisions is dispositive of the question or of material help.

While one Appellate Division judge distinguished between reports of customs agents in accordance with time and purpose and found support in the definition which the Customs Manual gives of duties of customs agents, we need not comment on that reasoning. See *Fine Arts Bag Co.* v. *United States*, 57 Cust. Ct. 625, R.D. 11224 (Adv. Treas. Dec., Vol. 101, No. 42, p. 35). Rather, we think that section 2633 allows the trial judge discretion in admitting such papers, and dispose of the present issue on that premise.

The specific reasoning of the trial judge was:

* * * While the reports of customs agents may be received in evidence under the provisions for reappraisement proceedings of 28 U.S.C., section 2633, such permission is entirely discretionary with the court. In this instance, the reports which are objected to cover various firms located in Buffalo, N.Y.; Dayton, Ohio; Los Angeles, Calif.; Baltimore, Md.; Oak Park, Ill.; Denver, Colo.; Seattle, Wash.; Boston, Mass.; and Royal Oak, Mich. The purpose for which these reports were submitted, as alleged by defendant, was merely to establish that there

---

a Section 2634(b) is not pertinent to the present case.

was some question as to the relationship between the various exclusive distributors in the United States and the manufacturer. Except as to exhibit B [⁴] for identification, which will be discussed separately, *infra*, all of the cities are within the jurisdiction of this court which regularly holds hearings throughout the United States, Ordinarily, agents' reports are made and cover interviews with companies in foreign countries, and the evidence or witnesses are, therefore, not readily available. Here, however, this is not the fact, and since this court regularly holds hearings throughout the United States, I feel that defendant's exhibits A, C, E, and G through J for identification are not admissible. Justice is better served in permitting cross-examination of witnesses rather than receiving reports of agents which are admittedly hearsay and are admissible only as an exception to the hearsay rule, pursuant to 28 U.S.C., section 2633. * * *

We are satisfied that the position of the trial judge is free of reversible error.

Certain aspects of section 2633 are clear from inspection. ▮ The language does not distinguish between different types of reports of customs agents. Nor does the expression "whose attendance cannot reasonably be had" qualify the reference to customs agents. See *Luigi Vitelli Elvea, Inc.* v. *United States*, 9 Cust. Ct. 466, R.D. 5661. Section 2633 states that "reports * * * of * * * customs agents * * * *may* be admitted in evidence." (Emphasis supplied), thus indicating that Congress intended some degree of discretion to lie with the trial judge. Moreover, ▮ the requirement of section 2634, that parties shall have an opportunity to "hear and cross-examine the witnesses of the other party," suggests Congress intended to preserve the right of cross-examination in customs proceedings, subject to express provisions to the contrary.

In that connection, the importer argues:

Congress did not use permissive rather than mandatory language through any oversight. In the review of the Tariff Act which preceded the 1930 enactment, a staff report pointed out that:

"This language [of Section 501 of the Tariff Act of 1922, predecessor of the present Section 2633 of the Judicial Code] leaves a consideration of the documents solely to the discretion of the Judge trying the case.

"Should not the language be changed so that the provision will read 'shall be received in evidence' * * *'" Memorandum of Court Decisions Affecting Tariff Act of 1922, Prepared for the Use of the Committee on Ways and Means, House of Representatives, 71st Cong., 1st Sess., p. 77 (Committee Print 1929).

Congress rejected this staff proposal, and the statute still says "may" not "shall."

We think that legislative history is of some significance. It is true, as the government urges, that the use of "shall" in place of "may" would be subject to the objection that the language might be construed as requiring admission of the documents even if they were irrelevant

---

[⁴] The government's exhibit B, which was admitted in evidence for the purpose of challenging the credibility of one of the importer's witnesses, is a report of a customs agent similar to the other exhibits, but concerns Triplex's operations.

-and immaterial. The report does indicate, however, that Congress was made aware that the language adopted was subject to interpretation as leaving the question "solely to the discretion of the Judge trying the case." Although language which would make it clear that the reports of customs agents must be received if relevant and material would readily appear to anyone considering the staff report, Congress declined to make a change. It appears that Congress recognized that reports of customs agents might frequently play an important part in providing the court with information not available, or available only at unreasonable hardship or expense, particularly where evidence from a foreign country is involved. It therefore gave the court the authority to admit such documents in its discretion.

The decisions cited by the government as pertinent to the present issue deal principally with situations in which it was held that the trial judge did not err in admitting such reports. Those cases are not apposite here since it seems plain that section 2633 allows the court to accept any customs agents' reports that are relevant and material, giving them only such weight as the circumstances warrant. While the refusal to admit certain documents in evidence was among the issues raised in *United States* v. *Cabrera Bros.*, 13 Ct. Cust. Appls. 82, T.D. 40936, such refusal was upheld there largely because the excluded documents had not been made available for examination by the appellate court.

In the present case, the excluded reports have been inspected. We find nothing in them or in the record to convince us that the trial judge abused his discretion in treating them as he did.

Resolution of the question of the value of the importations requires consideration of the record in connection with the manner in which the appraiser reached the appraised value of $14,133 for each machine. The commercial invoice shows $16,643 as the price "FOB New York, duty paid, your [the importer's] discount of 15% included" and 15 percent of that figure equals the disputed sum of $2,496.45. On special customs invoices, the f.o.b. New York price is set out along with a breakdown as follows:

| | |
|---|---|
| One sparking machine-tool ELERODA D-1 No. 10458 complete with accessories and tools | $16, 643. |
| Packing | 235. |
| Freight | 225. |
| Insurance | 61. |
| Custom Expenses | 50. |
| Custom duties | 2, 173. 55 |
| Agent's commission | 2, 496. 45 |

The items listed as packing and agent's commission were marked with ink notations "D" for "dutiable" and the items listed as freight, in-

surance, customs expenses and customs duties with notations "ND" for "nondutiable." The notations "D" and "ND" were each marked with a red check mark.

The trial court found a question of separability to be involved, stating:

Since the parties to this litigation are in agreement that the proper basis of appraisement is export value under section 402(b) of the Tariff Act of 1930, as amended, *supra*, it is deemed necessary to first consider defendant's point one, that the appraisement is not separable. This is so since if the importer is contesting only one element of a separable appraisement, he is entitled to rely upon the presumption of correctness attaching to the other elements of the appraiser's decision under the principles enunciated in *Kobe Import Co.* v. *United States*, 28 Cust. Ct. 586, Reap. Dec. 8102; *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371; *United States* v. *Schroeder & Tremayne, Inc. et al.*, 41 CCPA 243, C.A.D. 558; *United States* v. *Freedman & Slater, Inc.*, 39 Cust. Ct. 717, A.R.D. 77; *Paramount Import Co., Inc., et al.* v. *United States*, 40 Cust. Ct. 672, Reap. Dec. 9061, *affirmed Same* v. *Same*, 44 Cust. Ct. 702, Reap. Dec. 9697.

On that question it concluded:

An examination of the invoices covering the merchandise before the court, by virtue of the red checkmarks placed thereon by the appraiser's office, establishes that the appraiser utilized the breakdown of charges and held dutiable the items listed as packing and agent's commission, while holding the items listed as freight, insurance, customs expenses, and customs duties as nondutiable. The total unit invoice price included these charges. Therefore, in fact, the appraiser found the value of the merchandise to be the invoiced unit value, plus [including?] the items indicated, *supra*, as being dutiable, less the items indicated, *supra*, as being nondutiable. Such appraisement, in my opinion, falls squarely within the principles enunciated in the above-cited cases. Accordingly, the appraisement is separable, and plaintiff is entitled to rely upon the presumption of correctness attaching to all the elements, except the items indicated as commission.

The trial court then considered whether the importer was the "selling agent of the manufacturer or an independent purchaser having been granted exclusive territorial areas within the United States." Upon consideration of the evidence, it concluded that "a buyer-seller relationship" existed between Charmilles and Triplex and that the importer was "a selected purchaser at wholesale, who purchasesd at a price which fairly reflected the market value of the involved merchandise."

The Appellate Division agreed with the conclusions of the trial court both as to "separability" and the existence of a buyer-seller relationship which rendered the discount of 15 percent non-dutiable.

As to "separability" the Appelate Division stated:

Importers have, at best, a heavy burden of proof in litigating their grievances that arise out of the valuation of merchandise at sums which they claim are excessive. That the plaintiff has the burden, in reappraisement, of establishing by competent proofs each and every *disputed* element of value, but does not need to prove that which is not disputed, is the essence of the separability rule.

It is a judicially contrived rule designed, and quite properly, to narrow trial time and effort, and judicial decision, to the litigated issues.

\* \* \* \* \* \* \*

A separate unit price for appraised merchandise must be shown, and the item in dispute must be one clearly identifiable as having been considered by the appraiser and as affecting dutiable value. It is a truism that export value is defined as the *price* at which such or similar merchandise is freely offered, and a price must be shown.

Here price is shown. The issue, quite simply, is whether that price was subject to a discount that was freely offered to selected purchasers. The trial judge accepted, as plaintiff below did, the price as found by the appraiser; but he found, also, that such price was subject to a discount of 15 percent freely offered to selected purchasers at wholesale, the net price reflecting market value. We agree.

The government, in its brief, refers to those decisions holding appraisements separable which were relied on by the trial court. It then states:

An examination of the above cited cases reveals that the imported merchandise in each case was entered and appraised at basic unit prices *plus* certain other "charges" (i.e., an item representing an alleged buying commission; or an item representing an alleged increase in value by reason of loss in weight). The plaintiffs in those cases disputed only the additional charges, and the Government conceded that the issue related only to those charges. The courts thereupon found in each of these cases that the appraiser's return was, in effect, an appraisement at invoiced "first cost" prices, plus the disputed additions. Accordingly, the courts looked upon the appraisement as "an aggregate of separable elements," any one of which could be attacked without disturbing the presumption of correctness which attached to the uncontested additions and the basic or first cost.

In the instant case, however, the appraisement was at invoiced unit values which included all of the dutiable charges. The instant appraisement does not consist of a first cost price at which the merchandise was presumptively freely sold and to which the appraiser added certain disputed charges such as selling commissions or inland freight. Rather, the instant appraisement consists of a presumptively correct C.I.F., New York, duty paid price of $16,643 from which the appraiser deducted certain undisputed charges in the amount of $2,509.55. The trial court and the Appellate Term sustained the appellee's claim that the appraiser erred in not further reducing the appraised value by $2,496.45, which sum appellee contended represents a freely offered discount which the appraser treated as a selling commission and included within the appraised value. \* \* \*

Observing that, in determining export value under section 402(b), the definitions set out in section 402f(1), require that sales and offers of sales to all purchasers take precedence over sales to selected purchasers, the government argues that the importer has not proved that the appraiser appraised the present importations on the latter basis rather than the former.

With respect to the last point it is noted that the Appellate Division stated that it limited its decision, "as did the court below, to the case

before * * * [it]." Referring, therefore, to the findings of fact of the trial court, we note the following:

4. That, on or about the date of exportation herein, the said machines and accessories were sold for exportation to the United States, by the manufacturer to its exclusive United States distributors at list price, less a 15 percentum discount, regardless of quantity ordered, which price included all costs of packing and shipping to the United States, as well as United States customs duties and expenses.

That finding, obviously agreed with by the Appellate Division, shows that sales were found to be limited to selected purchasers, the manufacturer's "exclusive United States distributors," and, in our opinion, is supported by substantial evidence, including the testimony of an employee of Charmilles' American subsidiary who was formerly employed by Charmilles itself.

We think that the fact that the appraiser adopted, as evidenced by the aforesaid notations, the figures set out in the customs invoice for each of the items involved in reaching the appraised figure makes it apparent that he correctly treated sales to selected purchasers, including Triplex, as the basis for appraisement.

We do not see that it is significant here that the appraiser calculated the appraised value by subtracting accepted figures for what he considered nondutiable items from the total price given on the invoice rather than by adding the accepted figure for "agents' commission" to a net price. The invoice in the case is evidence of what the appraiser did just as it would be if it set forth the amount equal to the total price less the admittedly nondutiable items of freight, insurance, customs expenses and customs duties and the disputed "agent's commission," amounting to $11,637. The latter figure, of course, is the evaluation for which the importer contends, and the addition thereto of the "commission" of $2,496.45, with the odd cents disregarded, results in the appraised value of $14,133.

In ruling that the export value of each machine was the appraised value less the discount or commission, the Appellate Division stated:

We see no error in his [the trial judge's] findings that the importer was a purchaser and not an agent, and that the item of 15 percent is, in fact, a discount from price and not an agent's commission. As Judge Ford said, the proofs evidence the relationship of seller and buyer. We do not here recite those proofs, which are fully discussed in the opinion below. The record supports a sale made in the ordinary course of trade to a selected purchaser at wholesale, at a price fairly reflecting market value.

We agree with that conclusion.

Since there is substantial evidence to support the judgment of the Appellate Division, the judgment is *affirmed*.